# Exhibit "J"

Attached to:

Defendant Sosa's Motion in Limine to Preclude

Recently Disclosed Experts

**383**

```
 1                                       VOLUME: 2
                                         PAGES: 383-631
 2                                       EXHIBITS: 9
 3
                    UNITED STATES DISTRICT COURT
 4                    DISTRICT OF CONNECTICUT
 5                       CIVIL ACTION NO. 19-CV-10719-PBS
 6   _____
                                      :
 7   In the Matter of the Complaint   :
     and Petition of CAPT. JUAN, INC. :
 8   as owner of the F/V CAPT.        :
     BILLY HAVER for Exoneration      :
 9   from or Limitation of Liability  :
     _____:
10
11
12
13              CONTINUED ZOOM DEPOSITION OF:
14      CAPTAIN JUAN, INC.'S 30(b)(6) DESIGNEE JUAN ARAIZA
15         Appearing remotely from Seaford, Virginia
16                  Wednesday, April 14, 2021
17                   10:02 a.m. - 5:19 p.m.
18
19
20
21
22
23         Christine E. Borrelli, CSR, RPR, RMR
24
                        LEXITAS LEGAL
25        (508) 478-9795 - (508) 478-0595 (Fax)
                     www.LexitasLegal.com
```

**384**

```
 1  **Counsel, witness, and court reporter appearing remotely**
 2
 3  APPEARANCES:
 4
    ATTORNEYS FOR THE CLAIMANT RAFAEL HERRERA:
 5
           FLYNN|WIRKUS|YOUNG, P.C.
 6             350 Granite Street - Suite 1204
               Braintree, MA 02184
 7             (617) 773-5500
           BY: MICHAEL B. FLYNN, ESQ.
 8             mflynn@flynnwirkus.com
 9
    ATTORNEYS FOR THE CLAIMANT GRACIELA SOSA:
10
           LATTI & ANDERSON
11             30 Union Wharf
               Boston, MA 02109
12             (800) 393-6072
           BY: DAVID F. ANDERSON, ESQ.
13             danderson@lattianderson.com
14
    ATTORNEYS FOR CAPTAIN JUAN, INC.:
15
           REGAN & KIELY, LLP
16             40 Willard Street - Suite 304
               Quincy, MA 02169-1252
17             (617) 723-0901
           BY: JOSEPH A. REGAN, ESQ.
18             jregan@regankiely.com
19
20
21  IN ATTENDANCE:
22  Armando Nunez, Lexitas technical support
23
24
25
```

**385**

```
 1                        I N D E X
 2
 3
 4   WITNESS                  DIRECT  CROSS  REDIRECT  RECROSS
 5
     Juan Araiza
 6
     By Mr. Anderson                  386
 7   By Mr. Flynn                                561
 8
 9   EXHIBIT                                          PAGE:
10   Petitioner Sosa's Exhibit F, Abstract of Title ........ 386
11   Petitioner Sosa's Exhibit G, 2018 Annual Report ....... 386
12   Petitioner Sosa's Exhibit H, Complaint of Limitation .. 386
13   Petitioner Herrera's Exhibit 23, Deposition Excerpt ... 386
14   Petitioner Herrera's Exhibit 24, Interrogatory Responses 386
15   Petitioner Herrera's Exhibit 25, Google Earth Image ... 386
16   Petitioner Herrera's Exhibit 26, Loan Agreement ....... 386
17   Petitioner Herrera's Exhibit 27, Mortgage ............. 386
18   Petitioner Herrera's Exhibit 28, Amended & Restated
        Security Agreement ..................................... 386
19
20
21
22   _____
23   Exhibits digitally marked and returned to counsel with the
     transcript
24   _____
25
```

**386**

```
 1       (Petitioner Sosa's Exhibits F-H, Documents, marked
 2   for identification)
 3
 4       (Petitioner Herrera's Exhibits 23-28, marked for
 5   identification)
 6
 7       JUAN ARAIZA, having been previously identified, and
 8   previously duly sworn testifies as follows:
 9
10       CONTINUED CROSS-EXAMINATION BY MR. ANDERSON:
11
12   Q.  Mr. Araiza, do you understand that this is a
13   continuation of the deposition of yesterday and that you are
14   still under oath?
15   A.  Yes, sir.
16   Q.  Let me quickly go to the share screen.  Can you see
17   on your screen what has now been marked as Exhibit H?
18   A.  Yes.
19   Q.  Okay.  So, let me go to Exhibit E.
20       Counsel, I emailed you just five minutes ago copies
21   of these so you will have them, the three additional exhibits
22   I marked this morning.
23       Do you see in front of you, Mr. Araiza, a document
24   marked as Exhibit E?
25   A.  Yes.
```

527

1  A. No, sir. It's just -- you have got to write the
2  messages.
3  Q. Okay.
4  A. You fax them or email them.
5  Q. So, what I'm hearing from you is the only recordings
6  of communications from the Fishing Vessel Billy Haver to
7  anyone on land would be the recordings of the Mayday to the
8  Coast Guard, which we have identified, and also which you have
9  identified would be the Boatracs emails sent by the Billy
10 Haver both to shore and also to the Fishing Vessel Pursuit
11 during the trip; correct?
12 A. Correct.
13 Q. And you are not aware of any other recordings of
14 communications between the Billy Haver and anyone onshore,
15 either directly of recording, you know, like hitting record on
16 your phone somehow, or indirectly through the Fishing Vessel
17 Pursuit; is that correct?
18 A. Correct.
19 Q. I just want to make sure I have everything. That's
20 all. Okay. Captain Juan, Inc., has asserted a claim in this
21 case that the hull of the Captain Billy Haver, stripped of her
22 federal commercial fishing permits, is worth approximately
23 $1.1 million. Are you aware of that claim?
24 A. That's what the survey said, yes, sir.
25 Q. In making that claim, did Captain Juan, Inc., review

528

1  or rely upon any comparable sales?
2  A. No, sir. We just think that's what it's worth. The
3  surveyor, he knows more than we do. So, he's the one who sets
4  the price on it.
5  Q. And there are two surveys in the giant Exhibit E,
6  which we have talked about before, and -- well, let me
7  rephrase the question. Can you identify all of the facts and
8  documents which Captain Juan, Inc., relies upon for its claim
9  that the hull of the Fishing Vessel Captain Billy Haver
10 stripped of its fishing permits was worth approximately
11 $1.1 million in September of 2018?
12    MR. REGAN: Objection. Go ahead.
13    THE WITNESS: That's what we think the boat is
14 worth. It all depends if we want to give it to you but,
15 you know, we're not in a settlement.
16 Q. (By Mr. Anderson) My question was, what is the
17 basis or reason for that claim?
18 A. I would have to --
19    MR. REGAN: Objection. Go ahead.
20    THE WITNESS: You would have to put into
21 consideration what you pay for the boat, what it cost you
22 to bring it over, and the amount of money you spent in
23 the shipyard trying to make it a scallop boat.
24 Q. (By Mr. Anderson) As I understand your testimony
25 correctly, the claim of Captain Juan, Inc., that the Billy

529

1  Haver in September of 2018, the hull, stripped of its fishing
2  permit, was worth about $1.1 million, was not based on
3  reviewing comparable sales of other similar vessels; is that
4  correct?
5  A. That's correct.
6     MR. REGAN: Objection.
7     THE WITNESS: The survey said that, but I don't know
8  what he based it on.
9  Q. (By Mr. Anderson) It would be fair to -- okay. If
10 there were a bunch of vessels similar -- strike that. Are you
11 aware of any vessels that are substantially similar to the
12 Captain Billy Haver which had been sold without their fishing
13 permits at any time in the last four years?
14 A. No, sir.
15 Q. You would agree with me that it is rare for a vessel
16 of the size and type of the Fishing Vessel Captain Billy Haver
17 to be sold stripped of its fishing permits; is that correct?
18 A. That is correct. That would be a hard thing to do.
19 Q. And the reason it would be hard to sell a vessel
20 substantially similar to the Fishing Vessel Captain Billy
21 Haver without permits would be the vessel would have no value
22 because it can't fish; correct?
23 A. Yes, sir.
24 Q. Just one second. I'm very close to being done.
25 Okay. Going back to Exhibit A, the Notice of Deposition, the

530

1  last topic is documents described in the Schedule A. Do you
2  see that, Topic Number 20?
3  A. Yes, sir.
4  Q. And then below it says, "The deponent" -- that's the
5  person who gives testimony -- "is required to bring with him
6  for examination copies of documents on the attached
7  Schedule A, which I am now going to shift down to the attached
8  Schedule A. Do you see in front of you on the sixth page of
9  Exhibit A a document entitled Schedule A, 30(b)(6) Deposition
10 of Captain Juan, Inc., do you see that?
11 A. Yes, sir.
12 Q. Has Captain Juan, Inc., produced all of the
13 settlement sheets in the four years prior to the
14 September 2018 incident, to your knowledge?
15 A. Yes.
16 Q. Is the same true with respect to vessel
17 communication records?
18 A. Yes, sir.
19 Q. Has Captain Juan, Inc., produced, in connection with
20 this deposition, all of the vessel valuation documents
21 described in Item Number 3 of Schedule A of the Notice of
22 Deposition? You can take your time to review the items.
23 A. Yes, sir.
24 Q. And the fourth group of documents that Captain Juan,
25 Inc., was requested to bring to the deposition are "All